No. 24-6052

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA,
INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellees*

v.

CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS
OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
No. 4:22-cv-05541-JST
Hon. Jon S. Tigar

**MOTION TO STAY EXPANDED PRELIMINARY
INJUNCTION AND ALTERNATIVE PETITION
FOR WRIT OF MANDAMUS**

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
SARA J. EISENBERG
Chief of Complex & Affirmative
Litigation

ALEXANDER J. HOLTZMAN
JOSE A. ZELIDON-ZEPEDA
STEVEN F. EGLER
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
(415) 554-3800
alexander.holtzman@sfcityatty.org

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iiiii

INTRODUCTION ............................................................................. 1

FACTUAL BACKGROUND ............................................................ 3

    I.     The Pretrial Electronic Monitoring Program ........................ 3

    II.    The February 2024 Preliminary Injunction .......................... 5

    III.   The Motion to Enforce the Preliminary Injunction and Order ........... 6

LEGAL STANDARD ....................................................................... 9

ARGUMENT ................................................................................. 10

    I.     The Sheriff Has Properly Appealed the District Court's Expanded Preliminary Injunction ....................................... 10

    II.    The Sheriff Has at Least a Substantial Case on the Merits. ............... 12

         A.    The District Court Abused Its Discretion in Not Applying the Correct Legal Standard in the September 26 Order. .......... 13

         B.    The California Separation of Powers Does Not Support the September 26 Order. ........................................... 15

         C.    The Fourth Amendment and Parallel California Constitutional Provision Do Not Support the September 26 Order. ....................................................... 17

    III.   The Sheriff Will Be Irreparably Injured Absent a Stay. ...................... 17

         A.    Allowing PTEM to Continue Without the Warrantless Search Condition Would Harm the Sheriff's Public Protection Mandate and Put Sheriff's Deputies at Immediate Risk. ...................................................... 18

         B.    The Increased Jail Population Results in Unrecoverable Costs to the Sheriff and the Imposition of Extreme Mandatory Overtime on SFSO Staff. ....................................... 19

    IV.   A Stay Will Not Injure Class Members. ............................ 20

    V.    The Public Interest Favors a Stay. ..................................... 21

    VI.   This Court Should Alternatively Grant a Mandamus Petition If It Concludes the District Court's Order Is Not Otherwise Appealable. ....................................................... 22

CONCLUSION .................................................................................24

FORM 17. STATEMENT OF RELATED CASES PURSUANT TO
CIRCUIT RULE 28-2.6 ......................................................................25

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ..............................26

CERTIFICATE OF SERVICE ................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado v. Wolf*
  945 F.3d 1223 (9th Cir. 2019) ............................................................24

*Al Otro Lado v. Wolf*
  952 F.3d 999 (9th Cir. 2020) ...............................................................9

*Bauman v. U.S. Dist. Court*
  557 F.2d 650 (9th Cir. 1977) .............................................................22

*Boston Parent Coal. for Academic Excellence Corp. v. Sch. Comm. of City of Boston*
  996 F.3d 37 (1st Cir. 2021) .................................................................9

*Calderon v. U.S. Dist. Court*
  151 F.3d 1225 (9th Cir. 1998)............................................................22

*Carmel Valley Fire Prot. Dist. v. State*
  20 P.3d 533 (Cal. 2001)......................................................................15

*Cunningham v. David Special Commitment Ctr.*
  158 F.3d 1035 (9th Cir. 1998) ...........................................................10

*Duncan v. Bonta*
  83 F.4th 803 (9th Cir. 2023) (en banc)................................................9

*Earth Island Inst. v. U.S. Forest Serv.*
  351 F.3d 1291 (9th Cir. 2003) ...........................................................14

*Gon v. First State Ins. Co.*
  871 F.2d 863 (9th Cir. 1989) .............................................................10

*In re Humphrey*
  482 P.3d 1008 (Cal. 2021)....................................................... 4, 16, 21

*In re York*
  892 P.2d 804 (Cal. 1995).....................................................................21

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*
  774 F.3d 935 (9th Cir. 2014) .............................................................11

*Karnoski v. Trump*
    926 F.3d 1180 (9th Cir. 2019) ................................................................ 12, 14, 23

*Lair v. Bullock*
    697 F.3d 1200 (9th Cir. 2012) ................................................................ 9

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*
    242 F.3d 1163 (9th Cir. 2001) ................................................................ 13

*Nken v. Holder*
    556 U.S. 418 (2009) ................................................................ 9

*People v. Penoli*
    53 Cal. Rptr. 2d 825 (Ct. App. 1996) ................................................................ 15

*Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*
    204 F.3d 867 (9th Cir. 2000) ................................................................ 13

*Reynaga v. Cammisa*
    971 F.2d 414 (9th Cir. 1992) ................................................................ 22

*SEC v. Barton*
    79 F.4th 573 (5th Cir. 2023) ................................................................ 9, 10

*SG Cowen Secs. Corp. v. U.S. Dist. Court*
    189 F.3d 909 (9th Cir. 1999) ................................................................ 23

*Sharp v. Weston*
    233 F.3d 1166 (9th Cir. 2000) ................................................................ 12

*Tracy Rifle & Pistol LLC v. Harris*
    118 F. Supp. 3d 1182 (E.D. Cal. 2015), *aff'd*
    637 F. App'x 401 (9th Cir. 2016) ................................................................ 22

*U.S. Philips Corp. v. KBC Bank NV*
    590 F.3d 1091 (9th Cir. 2010) ................................................................ 23

*United States v. Amlani*
    169 F.3d 1189 (9th Cir. 1999) ................................................................ 23

*United States v. Hickey*
    185 F.3d 1064 (9th Cir. 1999) ................................................................ 22

*Winter v. Nat. Res. Def. Council, Inc.*
 555 U.S. 7 (2008) ............................................................... 10, 12, 14, 23

*Zepeda v. U.S. I.N.S.*
 753 F.2d 719 (9th Cir. 1983) .............................................................15

**Statutes**
28 U.S.C. § 1292(a) ........................................................................ 10, 12

28 U.S.C. § 1651 ............................................................................. 12, 22

**Rules**
Fed. R. App. P. 8 ..................................................................................9

**Other Authorities**
Johanna Lacoe, et al., *Bail Reform in San Francisco: Pretrial Release and Intensive Supervision Increased After Humphrey* at 1, Cal. Policy Lab (May 25, 2021), https://www.capolicylab.org/wp-content/uploads/2021/05/Bail-Reform-in-San-Francisco-Pretrial-Release-and-Intensive-Supervision-Increased-after-Humphrey.pdf..................................................................................21

# INTRODUCTION

In order to protect crime victims, the public, and the deputies responsible for administering the program, San Francisco Sheriff Paul Miyamoto (together with the City and County of San Francisco, "Sheriff") has long required that any individual enrolled in the Pre-Trial Electronic Monitoring ("PTEM") Program operated by the San Francisco Sheriff's Office ("SFSO") be subject to a court-ordered condition to submit to warrantless searches of their person, home, vehicle, and other property. In their complaint, Plaintiffs argued that the Sheriff was improperly imposing this condition on PTEM Program participants even when no judge had made an express and individualized determination that such a condition was warranted. In February 2024, the district court held that Plaintiffs were likely to succeed on their argument that "a court must determine the necessity of conditions such as four-way searches that infringe on the Fourth Amendment." ECF 77 (Declaration of Alexander J. Holtzman in Support of Motion to Stay ("Decl."), Ex. X) ("February 2024 Order") at 38. Accordingly, the district court enjoined the Sheriff from "imposing or enforcing any search condition broader than stated in each [individual's] Superior Court order." *Id.* at 41.

The Sheriff did not appeal from that part of the district court's order. The Sheriff concluded that no appeal was needed because the Superior Court had already amended its template order placing criminal defendants on the PTEM

Program to include different potential warrantless search conditions, ECF 57-1 (Decl., Ex. AB) at 3–4; ECF 57-2 (Decl., Ex. AC). Additionally, the Sheriff had consistently limited future participation in the PTEM Program to individuals for whom the Superior Court judge included an express warrantless search condition. Including only those individuals in the program would allow the Sheriff to fully comply with the district court's order not to impose or enforce "any search condition broader than stated in each [individual's] Superior Court order," while still protecting the safety of the public and the SFSO personnel who administer the program and interact regularly with program participants.

In keeping with this policy decision, over the next several months, the SFSO declined to admit a few new defendants the Superior Court ordered released subject to participation in the PTEM Program, but for whom the Superior Court had declined to order a warrantless search condition. In a couple other cases, the judge told defendants that a warrantless search condition was a required aspect of the PTEM Program. The district court has now ruled that these were violations of the preliminary injunction, and that the Sheriff has no ability to set criteria for who joins the PTEM program run by his office—even criteria he deems necessary to protect the safety of his deputies. ECF 111 (Decl., Ex. A) at 2–6 ("September 26 Order").

This ruling dramatically expands the scope of the February 2024 Order in a manner that is contrary to law (*see* Argument, *infra*) and created a Hobson's choice for the Sheriff. The Sheriff had to make a quick decision between (a) sending SFSO deputies into potentially dangerous situations where they would be unable to search participants or their surroundings before often-tense encounters or (b) shutting down the PTEM Program for new participants. The Sheriff chose the latter, which has had the unfortunate consequence of decreasing the release options available to criminal defendants in San Francisco and increasing the jail population. The Sheriff asks this Court to stay the September 26 Order pending appeal so the PTEM Program can reopen to new participants in a manner that comports with the stated requirements of the February 2024 Order.

## FACTUAL BACKGROUND

### I. The Pretrial Electronic Monitoring Program

The SFSO funds and operates the PTEM Program as one of many options available to Superior Court judges when determining the conditions necessary for release of criminal defendants awaiting trial in San Francisco. In addition to GPS monitoring, the Program includes an initial home check, 24/7 alert monitoring, and compliance checks. ECF 104-1 (Decl., Ex. E) ¶ 4. Program participants have been charged with serious, violent offenses or have other characteristics requiring PTEM Program enrollment for release. *See* ECF 31-2 (Decl., Ex. AG), 31-4 (Decl.,

Ex. AH), 31-7 (Decl., Ex. AI). No state or federal law requires the Sheriff to operate the Program.

The Superior Court can condition defendants' release on PTEM Program participation only when the Program and any other ordered conditions are the least restrictive, non-monetary conditions sufficient for release. *In re Humphrey*, 482 P.3d 1008, 1015, 1019 (Cal. 2021). Other than the PTEM Program, the Superior Court releases many defendants on their own recognizance ("OR"), requires some defendants to remain in jail pending trial, and releases others with conditions such as stay away orders or curfews, drug testing, no-gun and no-drug conditions, residential treatment, and varying levels of non-residential case management. *See* ECF 1-1 (Decl., Ex. AK) ¶¶ 14–16.

Like other supervision programs, the PTEM Program has requirements for participation. Decl., Ex. E ¶ 3. Among those requirements, participants are subject to a court-ordered warrantless search condition allowing searches at least by the Sheriff's Office, except when a defendant will be placed in a residential treatment program. *Id.*; ECF 31-17 (Decl., Ex. AJ) ¶¶ 14–15; ECF 79-3 (Decl., Ex. W) ¶ 4. In conducting initial home and routine compliance checks, the SFSO relies on the warrantless search condition, including to protect the Sheriff's deputies carrying out those inspections. Decl., Ex. E ¶¶ 3–4.

When a defendant's release is conditioned on participation in the PTEM Program, the Superior Court enters an order entitled Pre-Sentenced Defendant Electronic Monitoring - Court Order ("EM Order") at an evidentiary hearing at which the defendant is represented by counsel. Since May 2023, the EM Order has identified the judge's choice of a specific warrantless search condition. Decl., Ex. AC at 2. That order also includes a statement that "the Court indicates that the defendant has waived their 4th Amendment rights and understands the restrictions ordered by the Court." *Id.* The Superior Court judge describes the warrantless search condition to the defendant. ECF 53-3 (Decl., Ex. AE) at 2. Before entering the EM Order, the court asks the defendant: "Do you understand the admonishment I have just read to you? Have you had the opportunity to consult with your attorney about these conditions? Do you agree to these conditions?" *Id.* at 2–3.

## II.    The February 2024 Preliminary Injunction

In the February 2024 Order, the district court certified two subclasses. "[T]he 'revised rules subclass,' consists of all individuals who have in the past been, are currently, or will in the future be subject to the revised version of the Program Rules that was put into place following the May 2023 changes" to the Superior Court's EM Order and admonitions process, which includes all current and future PTEM Program participants. February 2024 Order at 27 (citations omitted). For the revised rules subclass, the Court entered a preliminary injunction,

set apart at the end of the order, enjoining the Sheriff "from imposing or enforcing any search condition broader than that stated in each class member's Superior Court order and from imposing and enforcing the Program Rules' data sharing provision (Rule 11)." *Id.* at 41–42.

The Sheriff appealed from the portion of the injunction against data sharing, but did not appeal the injunction as to the search condition given the different scopes of the injunctions as to the two rules. No appeal was needed as to the search condition because the Superior Court's order placing defendants in the PTEM Program already included different warrantless search conditions (Decl., Ex. AB at 3–4; Decl., Ex. AC), and the Sheriff had consistently limited future participation in his PTEM Program to defendants for whom the judge included a warrantless search condition. The Sheriff could comply with the district court's order not to impose or enforce "any search condition broader than stated in each [individual's] Superior Court order," while still protecting the safety of the public and SFSO personnel administering the Program.

## III.    The Motion to Enforce the Preliminary Injunction and Order

In June 2024, Plaintiffs filed a "Motion to Enforce the Preliminary Injunction." Plaintiffs submitted evidence about the pretrial release of six criminal defendants. In each release hearing, the Superior Court and counsel discussed the warrantless search condition. In the cases of Ying Ng, José Chávez, Nathaniel

Roye, and Luis Rosales-Verde, the Superior Court orders entered before enrollment in the PTEM Program included a warrantless search condition following statements during hearings suggesting the judge's decision to enter a warrantless search condition was based on it being a requirement for PTEM Program participation. ECF 104-2–5, 104-8–9, 104-11–12 (Decl., Exs. F–I, K–N); *see* ECF 101-10 (Decl., Ex. Q) at 6:4–5 ("THE COURT: It's Mr. Chavez, over your attorney's legal objections, I am now imposing the search condition[.]"). These individuals only agreed to the PTEM Program Rules or had warrantless search conditions entered *following* entry of court-ordered search conditions. Otis Mason and Jackson Vandeusen did not enroll in the PTEM Program and were not subject to the Program Rules. Decl., Ex. E ¶¶ 13, 20.

Notwithstanding the above, the district court granted the Motion to Enforce. At the hearing, the district court asserted the Sheriff had found a "workaround" by requiring a warrantless search condition to join the PTEM Program. ECF 117 (Decl., Ex. B) at 8:17. The district court held that the Sheriff violated the preliminary injunction in two ways: "First, the Sheriff's Office ha[d] refused to release individuals on electronic monitoring in cases where judges have declined to impose a warrantless search condition." September 26 Order at 2. The district court did not explain how requiring a warrantless search condition for PTEM Program participation was barred by the terms of the injunction in the February 2024 Order.

*Id.* at 2–3. "Second," the district court found that "judges have imposed a warrantless search condition in some cases but indicated that they would not have done so under the facts of the case if the Sheriff's Office did not require it as a prerequisite for electronic monitoring." *Id.* at 3. In explaining why these decisions by the Superior Court violated the preliminary injunction, the district court again exclusively cited language outside of its injunction. *Id.* at 4. Indeed, the district court recognized that "[a]rguably, this conduct does not violate the strict terms of the injunction because a court has ordered the search condition—albeit only because the Sheriff's Office has imposed it—and the Sheriff's Office is therefore not technically 'imposing or enforcing any search condition broader than that stated in each class member's Superior Court order.'" *Id.* at 5 (citation omitted).

The district court held that it "need not modify the injunction … to reach the conclusion that Defendants are failing to comply with it. But even if a modification were required," the district court could do so. *Id.* The district court explained that the Sheriff was now "on clear notice that the actions described in this order violate the preliminary injunction." *Id.* at 6. The district court threatened the Sheriff with contempt if he engaged in similar conduct. *Id.*

In light of the September 26 Order, the Sheriff has stopped enrolling new participants in the PTEM Program. ECF 116, 116-1 (Decl., Exs. C–D).

## LEGAL STANDARD

Stays pending appeal are governed by Federal Rule of Appellate Procedure 8. In ruling on stay motions, this Court considers: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009); *Duncan v. Bonta*, 83 F.4th 803, 805 (9th Cir. 2023) (en banc). The party seeking a stay must at least show a "substantial case for relief on the merits" but is not required to show that "it is more likely than not that [the movant] will win on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012).

A party may file a motion to stay directly with the Ninth Circuit without first seeking the specific relief requested from the district court if seeking such relief from the district court is impracticable. Fed. R. App. P. 8(a)(2)(A); *see Boston Parent Coal. for Academic Excellence Corp. v. Sch. Comm. of City of Boston*, 996 F.3d 37, 43–44 (1st Cir. 2021); *SEC v. Barton*, 79 F.4th 573, 581 (5th Cir. 2023); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006, fn. 5 (9th Cir. 2020). Here, the district court previously denied the Sheriff's request to stay its February 2024 Order pending appeal, and that case is currently pending in this Court. Case No. 24-1025. Moreover, the district court *expanded* its prior injunction at Plaintiffs' request (September 26 Order at 5), without requiring that Plaintiffs show changed

conditions or meet the *Winter* factors. Accordingly, any request to stay the district court's order would be impracticable, if not futile. *Barton*, 79 F.4th at 581. Given the "clear indication that the district court would have denied this motion," the Sheriff has properly brought this motion "because moving first in the district court would have been pointless." *Id.*

## ARGUMENT

### I.     The Sheriff Has Properly Appealed the District Court's Expanded Preliminary Injunction.

Initially, this appeal from the district court's September 2024 Order, which significantly expanded the prior injunction, is properly before this Court. Under 28 U.S.C. § 1292(a), appellate courts have jurisdiction to review interlocutory orders that grant, deny, or modify an injunction.

Though the district court asserted that the September 2024 Order was not a modification of its prior February 2024 injunction, the court's characterization is not determinative. Rather, "[w]hether an order modifies an existing injunction rather than merely interprets it depends on whether it substantially alters the legal relations of the parties." *Cunningham v. David Special Commitment Ctr.*, 158 F.3d 1035, 1037 (9th Cir. 1998); *see also Gon v. First State Ins. Co.*, 871 F.2d 863, 866 (9th Cir. 1989) (finding "no difficulty characterizing" an order that "substantially changed the terms and force of the injunction" as a modification of a prior injunction and therefore immediately appealable).

Here, although labeled as an order granting a motion to enforce, the district court's order substantially expanded the terms and scope of the prior injunction by enlarging conduct by the Sheriff that is enjoined. September 26 Order at 4–5. The February 2024 Order simply enjoined the Sheriff from "imposing or enforcing any search condition broader than stated in each [individual's] Superior Court order." February 24 Order at 41. It did not require the Sheriff to accept any defendant into the program or prohibit the Sheriff from requiring participants in the program to be subject to court-ordered search conditions. The new order does. September 26 Order at 3–4. This is a significant change.

Notably, the district court itself acknowledged that this newly-prohibited conduct was *not* covered by the plain language of its prior order, stating "[a]rguably, this conduct does not violate the strict terms of the injunction because a court has ordered the search condition." *Id.* at 5. But the court nevertheless ruled that this conduct "violate[d] the spirit of the injunction," *id.*, and stated that future similar conduct—although complying with the literal terms of the prior injunction—could subject the Sheriff to contempt. *Id.* at 6; *compare Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014) (cited by the district court but involving a party's active efforts to promote violations of the express terms of an injunction). In short, the September 26 Order reaches new conduct, causes serious and irreparable harm because it hamstrings

the ability of the Sheriff to operate the PTEM Program in a manner that protects Sheriff's deputies and the public, and can only be effectively challenged by immediate appeal. Accordingly, it is a modification of an injunction that is appealable at this time under 28 U.S.C. § 1292(a).[1]

## II.     The Sheriff Has at Least a Substantial Case on the Merits.

The district court's decision to modify the injunction was error and the Sheriff has, at least, a substantial argument that it should be reversed. "A party seeking modification … of an injunction bears the burden of establishing that a significant change in facts or law warrants revision … of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). The decision whether changed facts or law require modification of the injunction is "guided by the same criteria that govern the issuance of a preliminary injunction"—the *Winter* factors. *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019).

As an initial matter, the district court acted without jurisdiction in modifying the appealed injunction and did not apply the correct standard for evaluating the proposed modification of the injunction. *See* Part II.A, *infra.* If the district court had applied the proper test, it would not have granted the modification: Plaintiffs would not have been able to establish a likelihood of success in proving that

---

[1] To the extent this Court concludes that the district court's order is not appealable on an interlocutory basis, it should construe this motion as a petition for a writ of mandamus, 28 U.S.C. § 1651. *See* Part VI, *infra.*

separation of powers or the Fourth Amendment prevent the Sheriff from setting

criteria for admission to the PTEM Program. *See* Parts II.B–C, *infra*.

### A. The District Court Abused Its Discretion in Modifying the Injunction on Appeal and Not Applying the Correct Legal Standard in the September 26 Order.

"A district court lacks jurisdiction to modify an injunction once it has been

appealed except to maintain the status quo among the parties." *Prudential Real Est.*

*Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000). As discussed

above, the core issue in the appeal of the February 2024 Order is whether the

Sheriff can enforce PTEM Program rules when they are accepted by defendants

and memorialized in the Superior Court's orders. Because the Sheriff could

enforce the Superior Court's orders as to the warrantless search condition

consistent with the injunction in the February 2024 Order, the Sheriff focused his

appeal on the sharing of location information. Under the September 26 Order, the

Sheriff cannot consistently enforce the Superior Court's orders for a warrantless

search condition because it is a requirement for PTEM Program participation. The

district court therefore acted beyond its jurisdiction in its September 26 Order by

modifying the preliminary injunction in a manner that upset rather than "preserved

the status quo" and "materially alter[ed] the status of the case on appeal." *Nat. Res.*

*Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). The

September 26 Order should be reversed for this reason alone.

Even if the district court had jurisdiction to modify the injunction in the way that it did, the district court needed to consider whether there had been a significant intervening change in facts or law and, if so, whether that change required modification of the February 2024 Order under the *Winter* factors before ordering the expanded relief in the September 26 Order. *See Karnoski*, 926 F.3d at 1198. In the September 26 Order, the district court did not identify changed facts or law and considered none of the *Winter* factors. A district court "'necessarily abuses its discretion when it bases its decision on an erroneous legal standard.'" *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003) (citation omitted).

The district court additionally abused its discretion in the September 26 Order by expanding the injunction to apply to individuals outside the certified class. Again, "the 'revised rules subclass,' consists of all individuals who have in the past been, are currently, or will in the future be subject to the revised version of the Program Rules that was put into place following the May 2023 changes" to the Superior Court's EM Order and process. February 2024 Order at 27 (citations omitted). The September 26 Order expands the injunction to govern the Sheriff's conduct as to defendants who, like Mr. Mason and Mr. Vandeusen, may never be members of the PTEM Program or subject to the PTEM Program conditions and so are not members of the certified class. September 26 Order at 3. The district court needed to limit relief to the certified class, rather than expanding it to provide

additional relief to individuals outside of the class. *See Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (holding a court "may not attempt to determine the rights of persons not before the court").

### B. The California Separation of Powers Does Not Support the September 26 Order.

Looking to Plaintiffs' claims, the separation of powers does not support the scope of the September 26 Order. Because "the three branches of government are interdependent," one branch can take actions "that may 'significantly affect those of another branch,'" as long as they do not "defeat or materially impair" the powers of the other branch. *Carmel Valley Fire Prot. Dist. v. State*, 20 P.3d 533, 538 (2001) (citation omitted). Plaintiffs have offered no viable argument that the Sheriff violates the separation of powers by having rules for participation in a supervision program or refusing to allow individuals into the program if those rules are not appropriate for the individual.

Courts constitutionally may delegate implementation of supervision to law enforcement departments, even without certainty about the level of Fourth Amendment intrusion in a selected program. *See People v. Penoli*, 53 Cal. Rptr. 2d 825, 830 (Ct. App. 1996) (holding delegation to "probation department to unilaterally select a residential drug rehabilitation program" was consistent with separation of powers even through programs varied in intensity of treatment and supervision). There is even less of a potential separation of powers issue here

because the Superior Court orders the warrantless search condition, reflecting its awareness of the condition and view that imposition of the condition as a component of the PTEM Program comports with *Humphrey*.

The Superior Court has recognized it does not have jurisdiction to order the Sheriff to operate the PTEM Program in a particular way. *See* Decl., Ex. Q at 3:23–4:1 ("I don't think the Sheriff is under the jurisdiction of the Court. For example, I can't order that they accept somebody on home detention outside of the 50 mile radius. The Sheriff's Department is an independent department that has the authority to set their own rules for their program."). Federal courts should not countermand that determination. Superior Court judges have likewise refused to grant orders to show cause to the Sheriff on this issue. *See id.* at 4:6–9 (denying request for OSC); ECF 101-17 (Decl., Ex. R) at 7:13–15 (same).

The district court erred in holding that the Sheriff wrongfully controls the courts for purposes of the separation of powers by having required rules for a program he runs. Consistent with *Humphrey*, the Superior Court decides among the available release options. The Superior Court is not required to use the PTEM Program in any case. But when the court conditions release from custody on PTEM Program participation, it does not violate the separation of powers for the Sheriff to have criteria for admission to the Program.

### C.    The Fourth Amendment and Parallel California Constitutional Provision Do Not Support the September 26 Order.

Plaintiffs' Fourth Amendment and California search-and-seizure clause claims likewise do not support the September 26 Order because these provisions do not create a right for an individual to enroll in a supervision program. Consistent with the February 2024 Order, the Sheriff does not enforce any warrantless search condition except when it is expressly entered in a written order by the Superior Court. Nothing more is required for the Sheriff to comply with the Fourth Amendment. Criminal defendants not in the PTEM Program are not subject to any search related to the Program. And, as the February 2024 Order correctly recognizes, the Sheriff does not violate the Fourth Amendment when he enforces written search conditions entered by the Superior Court.[2]

## III.    The Sheriff Will Be Irreparably Injured Absent a Stay.

As noted above, to comply with the September 26 Order, the Sheriff had only two options: a) continue the PTEM Program with new participants potentially not subject to a warrantless search condition; or b) close the program to new participants. *See* Declaration of Undersheriff Katherine Johnson in Support of Defendants' Motion to Stay Expanded Preliminary Injunction and Alternative

---

[2] The February 2024 Order also relied in part on the California Right to Privacy, but that provision is relevant to Plaintiffs' challenge to sharing of GPS location information, not the warrantless search condition. Plaintiffs' Motion for a Preliminary Injunction did not argue that the right to privacy supported an injunction against a search condition.

Petition for Writ of Mandamus ("Johnson Decl.") ¶ 3. Both options create significant harm.

### A. Allowing PTEM to Continue Without the Warrantless Search Condition Would Harm the Sheriff's Public Protection Mandate and Put Sheriff's Deputies at Immediate Risk.

Continuing the PTEM Program without a requirement that participants be subject to a court-ordered search condition would harm the Sheriff's public protection mandate and put Sheriff's deputies at significant risk. The warrantless search condition is fundamental to maintaining the integrity and safety of the program. It allows the SFSO to detect tampering with equipment, address violations of the PTEM Program Rules, and enforce stay-away orders. It also promotes attendance at court hearings, compliance with court-ordered special conditions (e.g. no firearms, no alcohol, or no drugs) and treatment programs ordered by the court. Decl., Ex. AJ ¶ 15. The Sheriff cannot safely and effectively monitor PTEM Program participants if officers must first develop probable cause to conduct a search. *Id.* 14. For example, a key aspect of PTEM Program intake is the home check. Johnson Decl. ¶ 8. The purpose of the home check is to ensure that, at a minimum there are no weapons, crime victims, contraband, or illegal activities taking place at the address provided by the individual placed in PTEM. *Id*.

The Sheriff also cannot ensure the safety of his own employees without a warrantless search condition. The SFSO has collected examples of instances where the warrantless search condition was critical to maintaining officer safety and the integrity of the PTEM program. Johnson Decl. ¶ 7. For example, a deputy's compliance check of Demetrius Scobelliti found a spring-loaded switchblade that could have been used to harm the deputy conducting the search or someone else. *Id.* ¶ 7(a). And in October 2022, an SFSO deputy reviewed Oscar Cerrato's GPS coordinates, confirmed there had been a robbery within the relevant time and area, and tracked Cerrato returning to his motel. ECF 41-9 (Decl., Ex. AF) ¶ 3(b). After several hours, Cerrato exited the motel carrying a backpack. As detectives attempted to detain him, Cerrato dropped the backpack and ran. *Id.* Detectives recovered the backpack and found a 9mm ghost gun loaded with 15 rounds of ammunition. *Id.* Absent a search condition, which Cerrato knew meant the officers could search his backpack, Cerrato likely would not have dropped his backpack and could have used the loaded gun to shoot the officers.

### B. The Increased Jail Population Results in Unrecoverable Costs to the Sheriff and the Imposition of Extreme Mandatory Overtime on SFSO Staff.

The alternative decision by the Sheriff—closing the PTEM Program to new participants—also imposes irreparable harm on the Sheriff including because it will increase the number of criminal defendants at San Francisco jails. Johnson

Decl. ¶ 9. The increased population will result in staffing hardships, significant unrecoverable costs, and onerous operational burdens, all of which will cause irreparable harm to the Sheriff, SFSO employees, the public, and criminal defendants.

Adding beds is not a simple matter as the facilities must comply with legal requirements and comport with complicated classification and vacancy factors. Johnson Decl. ¶ 12. If the large number of anticipated new pretrial defendants exceeds the capacity of the SFSO's facilities, the SFSO would need to construct a new jail, which is estimated to cost $386.5 million. *Id.* ¶ 13. Even without new beds, the expected increase to the inmate population will require additional money, as the current Custody Division Daily Cost per individual is approximately $361/day. *Id.* ¶ 14.

Increased jail populations will also result in mandatory overtime ("drafting") for deputies and staff, many of whom would not sign up for additional shifts for which a conflict may exist absent drafting due to personal obligations. *Id.* ¶ 15. This will lead to operational inefficiencies and increased stress among staff. *Id.*

## IV.    A Stay Will Not Injure Class Members.

A stay will not injure class members. To the contrary, a stay would simply increase the options available to potential class members for release from custody. Before any defendant joins the PTEM program with a search condition, they have

signed the EM Order including a warrantless search condition, and, while

represented by counsel, agreed to the admonitions provided by the Superior Court

including the search condition. *See* ECF 71-3 (Decl., Ex. Z); ECF 71-4 (Decl.,

Ex. AA).

## V.    The Public Interest Favors a Stay.

The ability of the PTEM Program to admit new participants subject to the

required rules for participation supports the public interest. A study found that,

following *Humphrey*'s limits on cash bail, the "share of filed cases released to

intensive supervision (without financial conditions) doubled." Johanna Lacoe, et

al., *Bail Reform in San Francisco: Pretrial Release and Intensive Supervision*

*Increased After Humphrey* at 1, Cal. Policy Lab (May 25, 2021),

https://www.capolicylab.org/wp-content/uploads/2021/05/Bail-Reform-in-San-

Francisco-Pretrial-Release-and-Intensive-Supervision-Increased-after-

Humphrey.pdf. In the absence of the Sheriff's PTEM Program, courts will keep

more defendants in custody, having already rejected releasing them without

conditions. *See In re York*, 892 P.2d 804, 812 n.9 (Cal. 1995) (expressing

analogous concern).

Meanwhile, enjoining the PTEM Program Rules while allowing new

participants would also harm the public interest by reducing the protections

provided to the public and crime victims who rely on the Rules to ensure public

safety including enforcement of stay-away orders in domestic violence cases. *See Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016) ("The costs of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave").

## VI.  This Court Should Alternatively Grant a Mandamus Petition If It Concludes the District Court's Order Is Not Otherwise Appealable.

Alternatively, to the extent this Court concludes that the district court's order is not appealable on an interlocutory basis, it should construe this motion as a petition for a writ of mandamus. 28 U.S.C. § 1651.

This Court has discretion to construe an appeal as a petition for writ mandamus. *See Reynaga v. Cammisa*, 971 F.2d 414, 418 (9th Cir. 1992); *United States v. Hickey*, 185 F.3d 1064, 1067–68 (9th Cir. 1999). Under *Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977), the court considers: (1) whether there is an adequate alternative means to seeking relief; (2) whether the party will be damaged or prejudiced in a manner not correctable by appeal; (3) whether the district court's order is erroneous as a matter of law; (4) whether the district court's order is "an oft-repeated error, or manifests a persistent disregard of the federal rules," and (5) whether the district court's order raises important problems or new issues of law of first impression. *Calderon v. U.S. Dist. Court*, 151 F.3d 1225, 1226 (9th Cir. 1998). These factors are "weighed together based on the facts of the

individual case," and need not be all present for relief to issue. *See, e.g.*, *SG Cowen Secs. Corp. v. U.S. Dist. Court*, 189 F.3d 909, 913–14 (9th Cir. 1999). The last two factors "are rarely, if ever, present at the same time." *Id.* at 914 (citation omitted). Satisfaction of all five factors is not necessary. *United States v. Amlani*, 169 F.3d 1189, 1194 (9th Cir. 1999). The most important factor is whether the district court clearly erred. *Id.*

Here, these factors point towards granting mandamus relief. There is no adequate alternative means to seek relief, to the extent the Court concludes that the district court's order is not appealable as a preliminary injunction modification. Second, the Sheriff will be prejudiced in a manner not correctable on appeal, because the PTEM Program cannot be safely administered in the manner dictated by the district court's order. Without the Program, Superior Court judges will have fewer alternatives for pretrial release, likely leading to more pretrial detention. Moreover, as explained above, the district court clearly erred in expanding the preliminary injunctive relief while the injunction was on appeal, not requiring that Plaintiffs show significantly changed facts or law, not analyzing the *Winter* factor, and in its reading of the prior injunction. *See U.S. Philips Corp. v. KBC Bank NV*, 590 F.3d 1091, 1094 (9th Cir. 2010) (holding that a district court cannot "modify a preliminary injunction *nunc pro tunc* retroactively to expand … rights the parties have already accrued under an injunction."). And the September 26 Order

disregards proper procedures in granting injunctive relief and raises critical legal issues.

## CONCLUSION

For the above reasons, the Sheriff respectfully asks the Court to stay the district court's September 26 Order pending appeal, or alternatively grant a writ of mandamus.[3]

Dated:     October 10, 2024          Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
SARA J. EISENBERG
Chief of Complex & Affirmative Litigation
ALEXANDER J. HOLTZMAN
JOSE A. ZELIDON-ZEPEDA
STEVEN F. EGLER
Deputy City Attorneys

By:____*/s/ Alexander J. Holtzman*____
       ALEXANDER J. HOLTZMAN
       Deputy City Attorney

Attorneys for Defendants-Appellants
CITY AND COUNTY OF SAN
FRANCISCO, PAUL MIYAMOTO, IN
HIS OFFICIAL CAPACITY AS SAN
FRANCISCO SHERIFF

---

[3] The Court should enter an administrative stay to preserve the status quo until it rules on this motion. *Al Otro Lado v. Wolf*, 945 F.3d 1223 (9th Cir. 2019).

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)**  24-6052 _____

The undersigned attorney or self-represented party states the following:

I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

No. 24-1025, *Joshua Simon, et al. v. City & County of San Francisco, et al.* – Appeal from preliminary injunction entered February in the same district court case, argued September 10, 2024

Dated:        October 10, 2024        Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
SARA J. EISENBERG
Chief of Complex & Affirmative Litigation
ALEXANDER J. HOLTZMAN
JOSE A. ZELIDON-ZEPEDA
STEVEN F. EGLER
Deputy City Attorneys

By: _____*/s/ Alexander J. Holtzman*_____
        ALEXANDER J. HOLTZMAN
        Deputy City Attorney

Attorneys for Defendants-Appellants
CITY AND COUNTY OF SAN
FRANCISCO, PAUL MIYAMOTO, IN
HIS OFFICIAL CAPACITY AS SAN
FRANCISCO SHERIFF

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* [*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*](http://www.ca9.uscourts.gov/forms/form08instructions.pdf)

**9th Cir. Case Number(s)**  24-6052 _____

I am the attorney or self-represented party.

This brief contains 5,596 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☒ complies with the page/word limit of Cir. R. 27-1, 32-3.

☐ is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ☐ it is a joint brief submitted by separately represented parties;

    ☐ a party or parties are filing a single brief in response to multiple briefs; or

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature */s/ Alexander J. Holtzman* _____ Date October 10, 2024 _____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* [*forms@ca9.uscourts.gov*](mailto:forms@ca9.uscourts.gov)

# CERTIFICATE OF SERVICE

I, ANNAMARIE DAVIS, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System on October 10, 2024.

**MOTION TO STAY EXPANDED PRELIMINARY INJUNCTION AND ALTERNATIVE PETITION FOR WRIT OF MANDAMUS**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Consistent with the Federal Rule of Appellate Procedure 21, I have served a copy of this document on the district court.

Executed October 10, 2024, at San Francisco, California.

*/s/ Annamarie Davis*
ANNAMARIE DAVIS